**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| SANTOS MOLINAR-OWENS, | § | |
| *Plaintiff* | § | |
| | § | CIVIL ACTION NO. 5:20-CV-00751 |
| -vs- | § | |
| | § | |
| FIFTH THIRD MORTGAGE COMPANY | § | |
| *Defendant* | § | |
| | § | |
| | § | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

On this date, the Court considered Defendant's motion for summary judgment (docket no. 26), Plaintiff's response (docket no. 27), and Defendant's reply (docket no. 30). After careful consideration, Defendant Fifth Third Mortgage Company's motion is **GRANTED**.

## BACKGROUND

On February 22, 2013, Plaintiff's deceased former spouse, Jeffrey Peter Anthony Owens ("Mr. Owens"), signed a promissory note ("Note") in the original principal amount of $215,117.00, payable in favor of Fifth Third Mortgage Company ("Defendant").[1] The same day, Mr. Owens granted a security interest encumbering his homestead, located at 5620 Poppy Seed Run, San Antonio, Texas 78238 (the "Property") by signing a Deed of Trust ("Deed of Trust"). Collectively, the Note and Deed of Trust comprise the loan at issue in this lawsuit (the "Loan"), which was issued in renewal and extension of a pre-existing lien on the Property. Docket no. 26-2; docket no. 26-3 at 11, 17. The Note provides that failure to make the required monthly payments constitutes a default allowing the mortgagee to accelerate the Note by requiring the unpaid balance

---

[1]     Fifth Third Mortgage Company was the lender identified in, and beneficiary under, the Deed of Trust.  Fifth Third Bank N.A., as successor by merger to Fifth Third Mortgage Company, is the mortgagee of record in accordance with the Deed of Trust.

to be paid immediately. Docket no. 26-2 at 2. The Deed of Trust similarly authorizes the acceleration of the maturity date, and also allows the mortgagee to foreclose on the Property, subject to certain notice requirements. Docket no. 26-3 at 10.

Mr. Owens passed away on September 14, 2016, approximately one year after his marriage to Plaintiff on September 13, 2015. Docket no. 27 at 16, 30. On January 12, 2018, after some confusion as to whether he died intestate, Mr. Owens's sister, Laura Tompkins, was appointed as the executor of his estate. Docket no. 27 at 44. In his will, Mr. Owens left all of his property and estate to Ms. Tompkins and her husband, Mark Tompkins, in equal shares, thereby making them the beneficiaries of the Property. On January 17, 2018, Plaintiff and Ms. Tompkins entered into a Rule 11 agreement, approved by the probate court on January 27, 2018, which authorized Plaintiff "to maintain her homestead interest and rights to the former marital residence" and indicated that "Santos Molinar-Owens shall have said residence refinanced in her name." *Id.* at 50–52.

On February 19, 2018, Defendant sent a Notice of Default to Mr. Owens at the Property address by U.S. Certified Mail, Return Receipt Requested, advising that as of the date of the letter, the Loan was in default in the amount of $4,449.43, and that "failure to bring the loan current by March 25, 2018 (within 34 days from the date of th[e] letter) will result in acceleration of your loan, the foreclosure and sale of the property secured by the mortgage." Docket no. 26-4 at 2. The default on the loan was not cured at any time.

On August 7, 2019, Defendant sent a Notice of Substitute Trustee's Foreclosure Sale (the "Foreclosure Notice") by certified mail to both the Property address and Ms. Tompkins as the administrator of Mr. Owens's estate. no. 26-5 at 7–11. The Foreclosure Notice was also filed with the Bexar County Clerk and posted at the Bexar County Courthouse in accordance with Section 51.002(b) of the Texas Property Code. *Id.* at 5. In relevant part, the Foreclosure Notice included

an acceleration provision indicating that "[d]efault has occurred in the payment of the Indebtedness secured by the deed of trust. Therefore, the beneficiary accelerates the maturity of the Indebtedness and declares the entire Indebtedness immediately due and payable." *Id.* at 9. The Foreclosure Notice also indicated that the Property would be non-judicially foreclosed and sold on October 1, 2019, at the Bexar County Courthouse. *Id.* at 7.

On October 1, 2019, the Property was purchased at the foreclosure sale by Fifth Third for $193,315.00. The foreclosure sale price represents 87.5% of the fair market value of the Property, which was appraised at $221,020.00 by the Bexar County Central Appraisal District in 2019. Docket no. 26-11. On November 4, 2019, the Property was conveyed to the Secretary of Veterans Affairs by warranty deed and recorded on the same date. Docket no. 26-6. The Secretary of Veterans Affairs then initiated a suit for forcible detainer against Plaintiff and all occupants of the Property in state court. On February 19, 2020, the Bexar County Justice of the Peace entered an Agreed Judgment of Possession—signed by representatives for both Plaintiff and Veterans Affairs—which provided that "[Veterans Affairs] is entitled to possession of the property located at 5620 Poppy Seed Run, San Antonio, Texas 78238." Docket no. 26-7 at 2.

Despite Plaintiff's agreement to yield possession of the Property to Veterans Affairs, it is undisputed that Plaintiff remains in possession of the Property. On June 22, 2020, Plaintiff filed this lawsuit in Bexar County state court seeking to enjoin Fifth Third or Veterans Affairs from taking possession of the Property notwithstanding the agreed judgment authorizing the transfer of possession. *See* docket no. 1-1 at 4–9. In her original petition, Plaintiff alleged that Fifth Third was "fully aware of the court order which awarded Plaintiff title to the subject property" and that it had wrongfully foreclosed on her homestead by failing to provide her with proper notices of default and foreclosure in accordance with Section 51.002 of the Texas Property Code before initiating

foreclosure proceedings. *Id.* at 6–7. On June 25, 2020, Fifth Third removed the action to this Court on the basis of federal question jurisdiction under 28 U.S.C. § 1331 (based on Plaintiff's claims against a federal agency—the Department of Veterans Affairs) and diversity jurisdiction under 28 U.S.C. § 1332. Docket no. 1 at 2–4. Thereafter, Plaintiff filed an amended petition, the operative complaint in this action. Docket no. 5.

On December 3, 2020, Secretary of Veterans Affairs conveyed the Property to Fifth Third by Deed Without Warranty. Docket no. 26-8. On March 24, 2021, the Court dismissed Plaintiff's claims against Veterans Affairs without prejudice based on Plaintiff's counsel's representation at a status conference held on the same date that Plaintiff was unopposed to dismissal in light of the conveyance to Fifth Third. *See* Text Order, March 24, 2021.

Fifth Third now moves for summary judgment, asserting that Plaintiff's wrongful foreclosure claim fails as a matter of law because (1) the pre-foreclosure notices complied with the requirements of Texas Property Code; (2) the foreclosure sale price representing 87.5% of the fair market value was not "grossly inadequate" under Texas law; and (3) Plaintiff continues to reside at the Property. Docket no. 26.

## DISCUSSION

### I. Summary Judgment Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support

an essential element of the non-movant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II. Analysis

### A. The Rule 11 Agreement did not confer any rights to Plaintiff under the Deed of Trust

As a preliminary matter, the Court must address certain misconceptions Plaintiff evidently holds about the scope of the Rule 11 Agreement filed in the probate proceedings. The amended petition indicates that Plaintiff mistakenly believes that she was "awarded [] title to the subject property" when she entered into the Rule 11 Agreement with Ms. Tompkins on January 27, 2018. Docket no. 5 at 7. She was not.

The Rule 11 Agreement merely recognized Plaintiff's homestead interest in the Property.[2] *See* docket no. 27 at 50–52. Such an interest can prevent foreclosure under some circumstances. *See* TEX. CONST. art. XVI, § 50(a) ("The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for [the enumerated exceptions]"). However, the homestead provisions of the Texas Constitution offer no protection where, as here, the loan is a renewal and extension of an existing lien against the homestead. *See id.* § 50(a)(4) (excepting "the refinance of a lien against a homestead" from the homestead foreclosure protections afforded by the Texas Constitution); docket no. 26-3 at 11, 17 (indicating that the Note was issued in renewal and extension of a lien against homestead property).

Moreover, although the Rule 11 Agreement contemplated that "Santos Molinar-Owens shall have said residence refinanced in her name," it did not make Plaintiff a party to the Loan or affect Fifth Third's rights under the Note or the Deed of Trust in any way—Fifth Third was not a

---

[2] The amended petition also suggests that Plaintiff seeks to challenge the validity of the Agreed Judgment of Possession, recognizing that Veterans Affairs was entitled to possession of the Property, because "her counsel at the time made no effort to explain to the Court her ability to comply with the Probate Court Order and failed to explain the ramifications of [the] Court's Order." Docket no. 5 at 6. But Plaintiff's failure to understand the implications of the agreement is not a ground for disturbing it. *See Estes v. Republic Nat. Bank of Dallas*, 462 S.W.2d 273, 276 (Tex. 1970) ("[T]he general rule is that in the absence of a showing of fraud or imposition, a party's failure to read an instrument before signing it is not a ground for avoiding it."). A cause of action arising out of bad legal advice or improper representation is legal malpractice. *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 481 (Tex. App.—Dallas 1995, writ denied).

party to the Rule 11 Agreement. Docket no. 27 at 51–52. Plaintiff asserts that "Defendant manufactured the default" by refusing to accept each of three mortgage payments she attempted to make to cure the default or to discuss a new loan with Plaintiff "as she was not the obligor on the note, not a beneficiary under the will and not the Executor of the Estate."[3] Docket no. 27 at 3; *see id.* at 46–48. Fifth Third, however, was well within its rights under Texas law to refuse payments from Plaintiff, who was neither a party to the Deed of Trust nor a third-party beneficiary thereunder.[4] *See Olivares v. Pyatt*, No. 2:15-CV-81, 2015 WL 12751698, at *2 (S.D. Tex. Aug. 26, 2015) (concluding that the bank was under no obligation to accept payments from a purchaser of property subject to a mortgage lien where bank had not consented to permit him to continue making payments under the loan agreement, to which he was not a party).

### B. Plaintiff's wrongful foreclosure claim fails as a matter of law

Plaintiff alleges that Fifth Third wrongfully foreclosed on her homestead property by failing to comply with certain statutory notice requirements set forth in Section 51.002 of the Texas Property Code before initiating foreclosure proceedings.[5] Docket no. 27, at 7–8. In Texas, a claim

---

[3]    Plaintiff submits that these same barriers have thwarted her refinancing efforts. *See* docket no. 27 at 3. Despite her representation in the amended petition that she is "ready, willing and able to complete the transaction which would place the property in her stead," docket no. 5 at 7, it appears that Plaintiff has been unable to secure financing to tender the amount due under the Loan, apparently because of problems with the Property's foundation, *see* docket no. 26-13. Fifth Third asserts that Plaintiff's failure to produce the amount due is itself dispositive of her wrongful foreclosure claim. *See* docket no 26 at 13 (citing *McAuley v. Ameripro Funding, Inc.*, No. A-13-CV-679 LY, 2013 WL 12130363, at *7 (W.D. Tex. Dec. 3, 2013) ("[T]o set aside the foreclosure sale, a mortgagor must tender the amount owed on the mortgage.")). Because this alleged defect appears to be curable, however, the Court will proceed to analyze the merits of Plaintiff's wrongful foreclosure claim.

[4]    While not specifically asserted by Plaintiff, the Court considers the possibility that Plaintiff is a third-party beneficiary to the Deed of Trust in light of its obligation to review the facts in the light most favorable to the nonmoving party. *Sanford*, 555 F.3d at 181. To overcome the presumption against third-party beneficiary agreements in Texas, *City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011), a plaintiff must establish that (1) the contracting parties intended to secure a benefit for the plaintiff and (2) the contracting parties entered into the contract directly for her benefit. *Basic Capital Mgmt. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex. 2011). Here, there is no reason to believe that Plaintiff was an intended beneficiary of the Deed of Trust when it was executed on February 22, 2013, over two years before Mr. Owens and Plaintiff were married. Thus, to the extent Plaintiff 's claims depend on her status as a third-party beneficiary to the Deed of Trust, they fail as a matter of law.

[5]    Although Plaintiff's briefing describes the process by which a mortgage lender may obtain an order requiring the sale of property securing a lien through the Estates Code, Plaintiff concedes that "Fifth Third did not file an

for wrongful foreclosure requires a plaintiff to show: (1) a defect in the foreclosure proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and grossly inadequate selling price. *Foster v. Deutsche Bank Nat'l Trust Co.*, 848 F.3d 403, 406 (5th Cir. 2017). A wrongful foreclosure claim cannot survive if the party asserting the claim never lost the property in question. *Id.* (citing *Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1007 (S.D. Tex. 2011) (reasoning that recovery is premised on lack of possession of the subject property)).

## 1. The foreclosure proceedings were not defective

Plaintiff asserts that the foreclosure process was defective because Fifth Third failed to notify the executor of Owens's estate (Laura Tompkins), the vested owners of the Property (Laura and Mark Tompkins), or the life estate and homestead interest holder (Plaintiff) of any default or intent to accelerate.[6] Docket no. 27 at 7–12. Under Texas law, a foreclosure sale may be set aside as invalid if the notices required under § 51.002 are not properly and timely served. *See Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 n.6 (5th Cir. 1989). Section 51.002 of the Property Code requires that a debtor be served with two notices prior to foreclosure—a notice of

---

application for sale of mortgage property in the Probate Court" and thus was subject to the "mandatory process for selling real property by non-judicial foreclosure." Docket no. 27 at 8–9; *see* TEX. EST. CODE § 403.054 ("During an independent administration, a secured creditor whose claim is a preferred debt . . . is free to exercise any judicial or extrajudicial collection rights, including the right to foreclosure"). To the extent that Plaintiff's claim for wrongful foreclosure implicates the Texas Estates Code, it fails as a matter of law given Defendant's election to sell the Property by non-judicial foreclosure.

[6]     Plaintiff's summary judgment briefing also challenges the foreclosure based on the Affidavit of Military Status included with the Foreclosure Sale Deed, which indicates that Mr. Owens was not on active duty in any branch of the Armed Services in the twelve months preceding the foreclosure sale on October 1, 2019. *See* docket no. 27 at 3,10 (citing docket no. 26-5 at 13–15). Plaintiff alleges the affidavit is "materially false" because it represents that Mr. Owens was alive on October 1, 2019. *Id.* While the affidavit does incorrectly state that Mr. Owens was alive on the date of the foreclosure sale, the Court cannot agree with Plaintiff that it is "materially false." The Affidavit of Military status is required in default judgment proceedings to ensure that servicemembers on active duty are afforded the protections of the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901-4043. The SCRA prohibits a non-judicial foreclosure sale of a servicemember's property "during, or within one year after, the period of the servicemember's military service." 50 U.S.C. § 3953(c). Given that Mr. Owens died on September 14, 2016, it is undisputed that he was not on active duty status in the year preceding the foreclosure sale. Because neither Mr. Owens nor Plaintiff (as his spouse) were entitled to the protections of the SCRA on the date of the foreclosure sale, the misstatement in the affidavit that Mr. Owens was alive at the time is immaterial to the validity of the foreclosure.

default and acceleration and a notice of sale. TEX PROP. CODE. § 51.002(b), (d); *Rodriguez v. Ocwen Loan Servicing, LLC*, 306 F. App'x 854, 855–56 (5th Cir. 2009) (per curiam). Plaintiff acknowledges that Fifth Third "did provide notice of the foreclosure sale to the Executor of the Estate of Jeffrey Owens." Docket no. 27 at 9. Accordingly, Plaintiff's attack on the sufficiency of the pre-foreclosure notices applies only to the notice of default and acceleration. The summary judgment record establishes that Fifth Third sent a notice of default and acceleration to Jeffrey Owens at the Property address on February 19, 2018. Docket no. 26-4 at 2–5. Plaintiff does not challenge the substance of the notice, which appears to comply with the requirements of Texas law.[7] Instead, she argues that the notice was deficient because it was sent to Mr. Owens, rather than the executor of his estate, the owners of the Property, or the occupant of the Property at the time the notice was issued.

The Texas Property Code requires a mortgage servicer "shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trusts or other contract lien." TEX. PROP. CODE § 51.002(d). Courts applying Texas law have agreed that mortgage lenders need not send pre-foreclosure notices to any party other than the borrower, even where the non-borrowing party owns or occupies the subject property. *See Olivares*, 2015 WL 12751698, at *2–3 (purchaser of property subject to mortgage lien who maintained possession of the property and made loan payments on behalf of the borrowers was not entitled to pre-foreclosure notices because he was not a party to the loan); *Schlotte v. Option One Mortg. Corp.*, No. 09-11-00208-CV, 2012

---

[7]     *See Ogden v. Gibralter Savings, Ass'n*, 640 S.W. 2d 232, 233 (Tex. 1982) ("In the case of a mortgage secured by a deed of trust, such notice must afford an opportunity to cure the default and bring home to the mortgagor that failure to cure will result in acceleration of the note and foreclosure under the power of sale."); docket no. 26-1 at 3 (Affidavit in Support of Motion for Summary Judgment); docket no. 26-4 at 2 (advising that "failure to bring the loan current by March 25, 2018 (within 34 days from the date of this letter) will result in acceleration of your loan, the foreclosure and sale of the property secured by the mortgage").

WL 1951125, at *4 (Tex. App. May 31, 2012) ("Although [the purchaser] had an interest in the property, as noted above, he was not a party to the note or the deed of trust, and thus was not entitled to notice of the foreclosure sale."). This is true even where the borrower is deceased. *See Bank of N.Y. Mellon Tr. Co. v. Hancock*, No. 5:19-CV-270-H-BQ, 2020 WL 5417128, at *4 n.3 (N.D. Tex. May 18, 2020), *findings, conclusions, and recommendation accepted*, 2020 WL 2989023 (N.D. Tex. June 4, 2020) (concluding that notice of acceleration directed to deceased borrower after her death rather than to her heirs—one of whom resided on the subject property— was adequate under Texas law); *Deutsche Bank Tr. Co. Ams. for Residential Asset Mortg. Prods., Inc. v. Comstock*, No. 3:16-CV-3210-G-BH, 2018 WL 3352992, at *9 (N.D. Tex. June 11, 2018), *report and recommendation adopted*, 2018 WL 3344374 (N.D. Tex. July 9, 2018) (finding mortgage servicer had satisfied notice requirement by notifying the debtor, who was deceased, of the default and acceleration); *Morgan v. Chase Home Fin., LLC*, 306 F. App'x 49, 52–56 (5th Cir. 2008) (concluding that deceased borrower's common-law wife and administrator of his estate was not entitled to notice of default and an opportunity to cure).

Despite Plaintiff's possession of the Property on the date Fifth Third sent the notice of default, Plaintiff was not the "debtor" under the Deed of Trust and thus was not entitled to notice under Texas law.[8] Nor, indeed, were the Tompkins, as the owners of the Property, *see Olivares*, 2015 WL 12751698, at *2–3; *Hancock*, 2020 WL 5417128, at *4 n.3, or Ms. Tompkins, as the administrator of Mr. Owens's estate, *see Morgan*, 306 F. App'x at 52–56.[9] In short, the notice of

---

[8]     Even if Plaintiff were a borrower under the Deed of Trust, the notice directed to Mr. Owens at the Property address—where Plaintiff evidently lived at the time and continues to reside—would likely constitute constructive notice to Plaintiff under Texas law. *See Daniels v. Regions Bank*, No. 4:19-cv-00416-P, 2019 WL 4735800, at *10– 12 (N.D. Tex. Sept. 27, 2019) (finding such constructive notice where, as here, the deed of trust stated that "[n]otice to any one Borrower shall constitute notice to all Borrowers unless Applicable law expressly requires otherwise.").

[9]     Fifth Third asserts that, even if Ms. Tompkins were entitled to notice, as either an owner of the Property or the administrator of Mr. Owens's estate, Plaintiff would not have third-party standing to assert claims on her behalf. Docket no. 30 at 2–3. Generally, a litigant has third-party standing to sue on behalf of another individual if: (1) the litigant has suffered an injury-in-fact giving the litigant a sufficiently concrete interest in the outcome of the issue; (2)

default and intent to accelerate sent to Mr. Owens—the only debtor under the Deed of Trust—after his death was sufficient under the Texas Property Code. *See id.* at 55 (Texas law does not require a mortgage servicer "in the event of the death of a debtor . . . to conduct some level of investigation to determine the legal heirs for purposes of proper notification prior to foreclosure.").

### 2.   The selling price at the foreclosure sale was not "grossly inadequate"

Plaintiff has also failed to demonstrate a genuine issue of material fact as to the second element of a wrongful foreclosure claim—a grossly inadequate selling price. *Foster*, 848 F.3d at 406. The "weight of Texas authority rejects a determination of gross inadequacy where . . . [the] property sells for over 60% of fair market value." *Fed. Deposit Ins. Corp. v. Blanton*, 918 F.2d 524, 531–32 (5th Cir. 1991). As such, "[t]he Fifth Circuit has recognized, that under Texas law, a selling price is not grossly inadequate if the property sells for at least 60% of its fair market value." *Ayers v. Parker*, No. SA-12-CV-621-XR, 2013 WL 4048328, at *8 (W.D. Tex. July 29, 2013) (citing *Fed. Deposit Ins. Corp. v. Blanton*, 918 F.2d 524, 531 (5th Cir. 1990)).

Here, Plaintiff cannot establish that the selling price for approximately 87.5% of the fair market value was "grossly inadequate" under Texas law. Indeed, she appears to concede as much, instead arguing that alleged deficiencies in the pre-foreclosure notices excuse her from demonstrating that the sale price was inadequate. Docket no. 27 at 11 (citing *Matthews v. JPMorgan Chase Bank, NA*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *6 (N.D. Tex. Aug. 1,

---

the litigant has a close relationship with the third party on whose behalf the right is asserted; and (3) there is a genuine obstacle to the third party's ability to protect her own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). While Defendant correctly observes that there is no reason to believe that Ms. Tompkins faces a genuine obstacle to protecting her own interests, standing rules appear to be more relaxed in the context of a foreclosure sale. *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1988) ("[W]hen the third party has a property interest, whether legal or equitable, that will be affected by such a sale, the third party has standing to challenge such a sale to the extent that its rights will be affected by the sale."). Nonetheless, "standing to bring a claim is only useful when one has a viable claim to bring." *Olivares*, 2015 WL 12751698, at *3. Given the adequacy of selling price and Plaintiff's continued possession of the Property, even third-party standing would do nothing to cure the deficiencies in her claim for wrongful foreclosure.

2011) ("While Plaintiff does not explicitly allege that an inadequate sale price was recovered for the Property, the Court is not convinced by the cases cited by Defendants, which generally relate to technical errors in the foreclosure process, that a plaintiff given no notice of an opportunity to cure cannot sue for wrongful foreclosure."). This argument is unavailing, however, given the Court's conclusion that Defendant's pre-foreclosure notices were adequate under Texas law.

Because neither the pre-foreclosure notices nor the selling price were deficient, Plaintiff cannot establish the third element of a claim for wrongful foreclosure—a causal connection between the defect in the foreclosure proceedings and the gross inadequacy of the selling price. *Foster*, 848 F.3d at 406. Accordingly, her claim for wrongful foreclosure fails as a matter of law.

### 3.   Plaintiff's possession of the Property precludes her wrongful foreclosure claim

Even if Plaintiff could demonstrate an issue of material fact as to the adequacy of the pre-foreclosure notices and foreclosure sale price—and the Court concludes that she cannot—she would not be entitled to relief under Texas law because she has not lost possession of the Property. A wrongful foreclosure claim cannot survive if the party asserting the claim has not lost possession of the property in question. *Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1007 (S.D. Tex. 2011) (reasoning that recovery is premised on lack of possession of the subject property). As such, Texas courts do not recognize an action for attempted or anticipatory wrongful foreclosure. *See Motten*, 831 F. Supp. 2d at 1007. Despite the Agreed Judgment of Possession acknowledging that Plaintiff was not entitled to possession of the Property, it is undisputed that Plaintiff remains in possession of the Property. Thus, Plaintiff's wrongful foreclosure claim cannot survive summary judgment.

### C.  Plaintiff is not entitled to injunctive relief

Because Plaintiff's substantive claim for wrongful foreclosure fails as a matter of law, it cannot support her claim for injunctive relief. *See* docket no. 5 at 4–5. "Under Texas law, a request for injunctive relief is not itself a cause of action but depends on an underlying cause of action." *Cook v. Wells Fargo Bank, N.A.*, No. 3:10–CV–0592–D, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010) (citing *Brown v. Ke–Ping Xie*, 260 S.W.3d 118, 122 (Tex. App.—Houston [1st Dist.] 2008, no pet)). Accordingly, injunctive relief is not appropriate here.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (docket no. 26) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff. Plaintiff shall take nothing by her claims and her claims are **DISMISSED WITH PREJUDICE**.

Defendant is awarded costs and may file a bill of costs pursuant to the local rules. A final judgment pursuant to Rule 58 will follow.

It is so **ORDERED**.

**SIGNED** this 31st day of January, 2022.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE